Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
-------------------------------------------------
JESSICA TISCHER, individually and
as Personal Representative For the
Spouse and Children of Jacob Tischer,
Decedent,
       Plaintiff,         DEPOSITION
                           Case No.
   vs.                3:19-cv-00166-jdp
UNION PACIFIC RAILROAD COMPANY,
a Delaware corporation,

       Defendant.
-------------------------------------------------
UNION PACIFIC RAILROAD COMPANY,
a Delaware corporation,
       Defendant/Third-Party Plaintiff,
   vs.
PROFESSIONAL TRANSPORTATION, INC.,
       Third-Party Defendant.
-------------------------------------------------

    The deposition of TODD NUTTER, taken under and
pursuant to the provisions of Chapter 804 of the
Wisconsin Statutes and the acts amendatory thereof
and supplementary thereto, before Stephanie J. Peil,
Notary Public in and for the State of Wisconsin, at
the City of Eau Claire Fire & Rescue, 216 S. Dewey
Street, Eau Claire, Wisconsin, on the 25th day of
September, 2019, commencing at approximately
2:13 p.m.
    ORIGINAL TRANSCRIPT FILED AT THE

Page 2

APPEARANCES:
   Paul Banker, Esq., of Hunegs, LeNeave & Kvas,
1000 Twelve Oaks Center Drive, Suite 101, Wayzata,
Minnesota, 55391, appeared representing the
Plaintiff.
   Thomas A.P. Hayden, Esq., of Union Pacific
Railroad Corporation, 101 North Wacker Drive, Room
1920, Chicago, Illinois, 60606, appeared
representing the Defendant and Third-Party
Plaintiff, Union Pacific Railroad Corporation.
   Michael B. Cohen, Esq., of Quintairos, Prieto,
Wood & Boyer, P.A., 233 South Wacker Drive, 70th
Floor, Chicago, Illinois, 60606, appeared
representing the Third-Party Defendant, Professional
Transportation, Inc.
   Also present: Jessica Tischer and Michael
Linstedt.

Page 3

EXAMINATION INDEX
TODD NUTTER:
By Mr. Hayden                   4
By Mr. Banker                   8

EXHIBITS
NO EXHIBITS WERE MARKED.

Page 4

P R O C E E D I N G S
     TODD NUTTER,
being first duly sworn, testified as follows:
     EXAMINATION
BY MR. HAYDEN:
Q. Sir, can you state your name for the record.
A. Todd Nutter.  T-O-D-D, last name N-U-T-T-E-R.
Q. Can you explain to us what your background,
   training, and experience is leading up to
   August 2017.
A. August of '17 I will have been on the
   department for a little over five years as a
   firefighter/paramedic.  I have my paramedic
   licensure, NREMT paramedic, ACLS, PALS.
   There's a lot that probably -- CPR.
Q. Okay.
A. And then I went through the fire and medic
   program, Associate Degree.
Q. And what's your current title and position?
A. I'm an engineer/paramedic now.
Q. Okay.  What's the difference between that and
   what --
A. I'm -- I operate the heavy equipment, so drive
   an engine, ladder truck, stuff like that.  I'm
   also still an operating paramedic.

1 (Pages 1 to 4)

OFFICES OF ATTORNEY THOMAS A.P. HAYDEN
Q & A COURT REPORTERS, INC.

Page 5

1  Q. Okay. At the time of this -- this incident
2     we're talking about on August 12th of 2017, is
3     it correct that you -- you drove the ambulance,
4     and it was Mike who was the primary caregiver
5     --
6  A. Yes.
7  Q. -- during the call; is that fair?
8  A. Yep.
9  Q. And in looking at Exhibit 22 there in front of
10    you, can you tell whether it was you or Mike
11    who administered the vital -- or tested the
12    vital signs of Mr. Tischer?
13 A. I do not see a name or initial to the vital
14    signs on here. And if I remember right, I
15    don't believe there was a -- a designation to
16    that on the report at the time. It --
17 Q. Okay.
18 A. It has since changed.
19 Q. The form you're -- the format you're using now
20    --
21 A. Yes.
22 Q. -- does have that designation?
23 A. I do believe so, yes.
24 Q. By the way, do you have a recollection in your
25    mind's eye of this call?

Page 6

1  A. I remember showing up on the scene, and that's
2     really kind of where it kind of fades out on
3     me, so...
4  Q. Okay. Did you -- and you did not write the
5     narrative on --
6  A. I did not, no.
7  Q. And do you remember specifically talking to
8     anyone at the scene?
9  A. I cannot recall.
10 Q. Lastly, can you help us out with this timeline.
11    I think you might be able to explain what PSAP
12    means from looking at --
13 A. I don't know the actual what each letter stands
14    for, but that is usually the time that
15    dispatch, comm center, receives the call, they
16    take down the information, and then between
17    that time, then they take all that information,
18    process it into what response is needed and who
19    to call out.
20 Q. Okay. So as best as you know, the 20:56:27
21    would have been when the 911 call was received
22    by dispatch?
23 A. To the best of my knowledge, yes.
24 Q. Then you guys were dispatched at 21:00:35?
25 A. It appears so, yes.

Page 7

1  Q. And then you arrived at the patient at
2     21:07:52; is that right?
3  A. At the patient, yes.
4  Q. And then you -- you arrive with the patient at
5     the designation, in this case the Eau Claire
6     Mayo facility, at 21:24:24?
7  A. Arrive destination, yes.
8  Q. Okay. And what's that last designation, In
9     Service time?
10 A. So that is after we have done our patient
11    handoff with the medical staff at the hospital,
12    we have gotten any additional information from
13    them, like sometimes Mayo will give us a face
14    sheet with their health insurance information
15    on it for billing purposes. We get our
16    ambulance back in order, cleaned, cot ready to
17    go, all equipment ready to go for the next
18    call.
19 Q. When you record what a patient arrival
20    destination time is, is that the time that you
21    are, for want of a better word, transferring
22    the patient to the hospital personnel?
23 A. That is the time that -- and it depends on --
24    each individual person has a different second
25    in which they call that in. Some call it the

Page 8

1     minute they put the ambulance in park; most
2     call it as the bay door's opening, we're
3     arriving at Mayo or Sacred Heart or Marshfield
4     or whatever it is. So it is not the actual
5     handoff of the patient to the medical staff.
6  Q. But that's what -- that's just seconds later
7     that that occurs?
8  A. Usually depending on what equipment you have to
9     move with the patient.
10 Q. And particularly when stroke care had been
11    identified en route, that -- that -- that
12    you're carrying a possible stroke victim and
13    the stroke response team is ready --
14 A. Yes.
15 Q. -- at arrival; is that correct?
16 A. They didn't -- I don't -- I don't remember if
17    anybody met us in the bay. But usually when
18    that happens, it's right inside the door, and
19    the doctor usually starts his assessment right
20    as we're standing there.
21    MR. HAYDEN: Okay. Thank you. Those are
22    all my questions for you.
23    MR. COHEN: No questions.
24 BY MR. BANKER:
25 Q. I just want to go back. You -- you said you

Page 9

```
 1       did have a recollection of showing up at the
 2       scene --
 3  A.   Yep.
 4  Q.   -- to this call.  What do you recall about
 5       showing up at the scene?
 6  A.   I remember it was dark out, and we were at the
 7       train yard.  That was about all I can really
 8       remember.  It's been a long time.  A lot of
 9       calls.
10          MR. BANKER:  Sure.  I don't have any
11       further questions.
12          MR. HAYDEN:  Nothing else.  You're done,
13       sir.
14          (Proceedings concluded at approximately
15       2:19 p.m.)
```

Page 10

```
 1  STATE OF WISCONSIN   )
                         )ss
 2  COUNTY OF EAU CLAIRE )
 3
 4     I, Stephanie Peil, Notary Public in and for the
 5  State of Wisconsin, certify there came before me the
 6  deponent herein, namely Todd Nutter, who was by me
 7  duly sworn to testify to the truth and
 8  nothing but the truth concerning the matters in this
 9  cause.
10     I further certify that the foregoing transcript
11  is a true and correct transcript of my original
12  stenographic notes.
13     I further certify that I am neither attorney or
14  counsel for, nor related to or employed by any of
15  the parties to the action in which this deposition
16  is taken; furthermore, that I am not a relative or
17  employee of any attorney or counsel employed by the
18  parties hereto or financially interested in the
19  action.
20     IN WITNESS WHEREOF, I have unto set my hand and
21  affixed my Notarial Seal this 3rd day of October,
22  2019.
23
24  _____
25  Stephanie J. Peil, Notary Public
```

3 (Pages 9 to 10)