Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

```
JESSICA TISCHER,              ) CASE NO.
INDIVIDUALLY AND AS           ) 3:19-CV-00166-JDP
PERSONAL REPRESENTATIVE       )
FOR THE SPOUSE AND            )
CHILDREN OF JACOB             )
TISCHER, DECEDENT,            )
                              ) TELEPHONIC DEPOSITION OF
         PLAINTIFF,           ) DEBRA GENGLER
                              )
VS.                           )
                              )
UNION PACIFIC RAILROAD        )
COMPANY, A DELAWARE           )
CORPORATION,                  )
                              )
         DEFENDANT.           )
-------------------------
UNION PACIFIC RAILROAD        )
COMPANY, A DELAWARE           )
CORPORATION,                  )
                              )
         DEFENDANT/           )
    THIRD-PARTY PLAINTIFF,    )
                              )
VS.                           )
                              )
PROFESSIONAL                  )
TRANSPORTATION, INC.,         )
                              )
   THIRD-PARTY DEFENDANT.)
-------------------------
```

TELEPHONIC DEPOSITION OF DEBRA GENGLER, taken before Cynthia Craig, Registered Professional Reporter and General Notary Public within and for the State of Nebraska, beginning at 2:12 p.m., on October 22, 2019, at the Office of Thomas & Thomas Court Reporters & Certified Legal Video, 1321 Jones Street, Omaha, Nebraska, pursuant to the within stipulations.

Page 2

1  A P P E A R A N C E S
2  FOR THE PLAINTIFF:
   MR. PAUL BANKER
3  HUNEGS, LENEAVE & KVAS, P.A.
   1000 Twelve Oaks Center Drive, Suite 101
4  Wayzata, Minnesota 55391
   (612)339-4511
5  pbanker@hlklaw.com
6
7  FOR THE DEFENDANT (UNION PACIFIC):
   MR. THOMAS A.P. HAYDEN
8  UNION PACIFIC RAILROAD CORPORATION
   101 North Wacker Drive, Room 1920
9  Chicago, Illinois 60606
   tahayden@up.com
10
11 FOR THE DEFENDANT (PROFESSIONAL TRANSPORTATION, INCORPORATED):
12 MR. MICHAEL B. COHEN
   MR. IAN FULLER     (Present via telephone)
13 QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
   233 West Wacker Drive, 70th Floor
14 Chicago, Illinois 60606
   (312)566-0700  FAX (312)566-0041
15 michael.cohen@qpwblaw.com
16
17
18
19
20
21
22
23
24
25

Page 3

```
 1         I N D E X
 2   CASE CAPTION ........................... Page  1
     APPEARANCES ............................ Page  2
 3   INDEX .................................. Page  3
     STIPULATIONS ........................... Page  4
 4   TESTIMONY .............................. Page  4
     CERTIFICATE ............................ Page 14
 5
 6   DIRECT EXAMINATION
        BY MR. BANKER ....................... Page  4
 7
     CROSS-EXAMINATION
 8      BY MR. COHEN ........................ Page 10
 9   CROSS-EXAMINATION
        BY MR. HAYDEN ....................... Page 12
10
11   EXHIBITS:                     REFERENCED
12   Exhibit 9   BasicPlus First Aid Book .......... 5
13
```

Page 4

```
 1       (Whereupon, the following proceedings were had,
 2   to-wit:)
 3           (The court reporter asked
 4            counsel if there were any
              stipulations for the record.)
 5       MR. BANKER:  I don't believe so.
 6           DEBRA GENGLER,
 7    having been first duly sworn,
 8    was examined and testified as follows:
 9           DIRECT EXAMINATION
10   BY MR. BANKER:
11       Q.  Could you, please, state your name for the
12   record.
13       A.  Sure.  Debra, D-E-B-R-A; Gengler,
14   G-E-N-G-L-E-R.
15       Q.  Ms. Gengler, have you ever had your
16   deposition taken before?
17       A.  Yes.
18       Q.  How many times roughly?
19       A.  Ten roughly.
20       Q.  Okay.  So you're probably familiar with
21   the process, but I'll just go over some ground
22   rules.  It's important that you answer audibly
23   because the court reporter's taking down everything
24   that we say.
25           It's also important that we not talk over
```

Page 5

1  each other, so I'll try to ask a question and then
2  pause to give you a chance to answer.  If at any
3  time I ask a question, you don't understand it, let
4  me know and I'll try to clarify it.
5      A.  Okay.
6      Q.  And if you need to take a break, let me
7  know.
8      A.  Okay.
9      Q.  What, if anything, have you done to
10 prepare -- other than conversations with your
11 attorney, what have you -- if anything, have you
12 done to prepare for your deposition before?
13     A.  I looked through a first aid book briefly.
14     Q.  Any other conversations?
15     A.  No.
16     Q.  Any other documents you looked at?
17     A.  No.
18     Q.  And when you say first aid book -- uh,
19 I'll work around it.
20              (Exhibit 9
                 marked previously, but referred
21               to in this deposition.)
22 BY MR. BANKER:
23     Q.  Showing you what's been previously marked
24 as Exhibit 9, I'll represent to you that that is a
25 deposition exhibit that is excerpts from the

Page 6

1  BasicPlus training handbook to show the table of
2  content -- the cover page, table of contents and
3  some substantive information.
4          Is that the first aid book that you
5  referred to?
6      A.  It was a blue book.
7      Q.  Okay.
8      A.  Same title.
9      Q.  Okay.  Let me go about it this way:  Do
10 you know a UP employee by the name of Jacob Tischer?
11     A.  No.
12     Q.  Were you aware that Jacob Tischer had an
13 incident on August 12th, 2017, at the Altoona yard
14 in Eau Claire -- or at the UP yard in Altoona, where
15 he needed emergency medical attention?
16     A.  No, not until today.
17     Q.  Okay.  And so I take it -- where are you
18 physically located in terms of your office?
19     A.  Omaha.
20     Q.  Here in Omaha?
21     A.  Yes.
22     Q.  So I take it you weren't in Altoona --
23     A.  Correct.
24     Q.  -- on August 12th, 2017?
25     A.  Correct.

Page 7

1      Q.  Did you speak with anyone about the
2  incident on August 12th, 2017?
3      A.  No.
4      Q.  And let me give you a couple of names just
5  to be specific about that.
6          Have you spoken with Neal Friendshuck
7  (phonetic) about this incident?
8      A.  No.
9      Q.  Chaz Lux (phonetic)?
10     A.  No.
11     Q.  Mark Marvin?
12     A.  No.
13     Q.  Mike Swentech (phonetic)?
14     A.  No.
15     Q.  Eric Ericksen (phonetic)?
16     A.  No.
17     Q.  Jessica Carson?
18     A.  No.
19     Q.  Or John Holland?
20     A.  No.
21     Q.  Okay.  So other than hearing today that
22 there was an incident involving Jacob Tischer, I
23 take it that you don't have any personal knowledge
24 whatsoever --
25     A.  Correct.

Page 8

1      Q.  -- about that?
2          Do you have -- in -- let me just ask a
3  couple of questions about -- by way of background.
4  What -- are you currently employed?
5      A.  Yes.
6      Q.  By whom?
7      A.  Union Pacific.
8      Q.  And what do you do for them?
9      A.  I -- my title is called a director of
10 clinical services.
11     Q.  And how long have you done that?
12     A.  June 2006.
13     Q.  What do you do in your role as director of
14 clinical services?
15     A.  Responsible for fitness for duty, staff
16 report to me, and the VCM, vocational case managers,
17 report to me.
18     Q.  Do you have any direct interaction or
19 oversight of the Twin Cities' service unit?
20     A.  No.
21     Q.  Do you have any direct responsibility for
22 training of employees regarding any sort of medical
23 issues on the Twin City service unit?
24     A.  Employees, no.
25     Q.  Okay.  When you say employees, no --

Page 9

1    A.   No.
2    Q.   -- were you thinking of something --
3    someone -- something else that you do training for?
4    A.   No.
5    Q.   Okay.  How long have you been with UP?
6    A.   June 2006.
7    Q.   Okay.  What did you do generally before
8    that?
9    A.   Occupational health nursing.
10   Q.   Here in Omaha?
11   A.   No, most recent was North Sioux City,
12   South Dakota.
13   Q.   Okay.  Was that for another company?
14   A.   Correct.
15   Q.   What company?
16   A.   Gateway.
17   Q.   You're a high school graduate?
18   A.   Correct.
19   Q.   College graduate?
20   A.   Correct.
21   Q.   Where did you go to college?
22   A.   Briar Cliff.
23   Q.   And any --
24   A.   Master's of -- I'm a nurse, so I first
25   went to the nursing school, then Briar Cliff College

Page 10

1    for my BSN, and University of Iowa for my master's
2    in occupational health nursing.
3    Q.   And you mentioned that you're a nurse, so
4    do you hold a nursing certification of some kind?
5    A.   A license, yes.
6    Q.   Is that a licensed --
7    A.   Yes.
8    Q.   LLP?
9    A.   RN.
10   Q.   RN?
11   A.   Yes.
12        MR. BANKER:  Sorry.  I guess I don't
13   have any further questions.
14             CROSS-EXAMINATION
15   BY MR. COHEN:
16   Q.   Good afternoon.  My name is Michael Cohen
17   and I represent Professional Transportation,
18   Incorporated.  Are you familiar with the name
19   Professional Transportation, Incorporated?
20   A.   I know it's a service that is utilized
21   within the company and that's about it, provide
22   transportation.
23   Q.   Okay.  Are you -- do you have any
24   awareness of Professional Transportation,
25   Incorporated's role within this case?

Page 11

1    A.   Not exactly, except they provide
2    transportation --
3    Q.   Fair enough.
4    A.   -- for crew.
5    Q.   Okay.  Suffice it to say, you have no
6    criticism of Professional Transportation,
7    Incorporated, whatsoever regarding the issues
8    involved in this matter, correct?
9    A.   Could you restate that, please.
10   Q.   Sure.  Do you have any criticism regarding
11   Professional Transportation, Incorporated, regarding
12   this matter?
13   A.   I can't respond to that.  I've not been
14   involved on the details of the transportation of
15   your company.
16   Q.   Right.  And correct -- I would be correct
17   in saying you thus have no criticism regarding the
18   acts or omissions of Professional Transportation,
19   Incorporated, regarding Mr. Tischer?
20        MR. HAYDEN:  I think she said she has
21   no opinion.
22        THE WITNESS:  Yeah, I -- I have no
23   response to that.
24        MR. COHEN:  Okay.  I don't have any
25   further questions.

Page 12

1         THE WITNESS:  Okay.
2         MR. HAYDEN:  Let me just think for a
3    second here.
4              CROSS-EXAMINATION
5    BY MR. HAYDEN:
6    Q.   Ms. Gengler, are you aware that -- you're
7    aware that Union Pacific does not require training
8    of its employees on the signs and symptoms of a
9    stroke?
10   A.   Yes.
11   Q.   What is the reasoning as you understand it
12   for that?
13   A.   Well, I understand there's no regulation
14   requiring us to do that.  I also understand that the
15   incidence of a stroke on property is extremely low,
16   and I also believe that by training 45,000 employees
17   to become health care providers is not prudent.
18   Q.   And does the railroad train its employees
19   on when to call 911?
20   A.   No.
21   Q.   And is there an expectation that you would
22   have as to if there's a change in someone's
23   condition, employee's condition that an employee
24   would -- a fellow employee may call 911?
25   A.   Yes, it would be my expectation that if I

Page 13

```
 1   was an employee and I felt like I needed someone, I
 2   would ask a coworker to call 911.
 3       Q.  Uh-huh.
 4       A.  Or if the coworker saw that I was becoming
 5   suddenly incapacitated and couldn't care for myself,
 6   it would be my expectation they would call for me.
 7           MR. HAYDEN:  Okay.  I don't have any
 8   further questions.
 9           MR. BANKER:  Nothing further.
10           MR. COHEN:  Nothing for me.
11           MR. HAYDEN:  All right.  Thank you.
12           (Court reporter asked counsel to
13            place their transcript order on
              the record.)
14           MR. BANKER:  I'll take a full and
15   condensed pdf with the exhibit.
16           MR. COHEN:  No copy.
17           MR. HAYDEN:  Etran.
18           (2:23 p.m. - Adjournment.)
19                 ** ** ** **
20
21
22
23
24
25
```

Page 14

```
 1                    C E R T I F I C A T E
 2
     STATE OF NEBRASKA  )
 3                      ) ss.
     COUNTY OF DOUGLAS  )
 4
 5       I, Cynthia Craig, Registered Professional
 6   Reporter and General Notary Public within and for
 7   the State of Nebraska, do hereby certify that the
 8   foregoing testimony of DEBRA GENGLER was taken by me
 9   in shorthand and thereafter reduced to typewriting
10   by use of Computer-Aided Transcription, and the
11   preceding thirteen (13) pages contain a full, true
12   and correct transcription of all the testimony of
13   said witness, to the best of my ability;
14       That I am not a kin or in any way associated
15   with any of the parties to said cause of action, or
16   their counsel, and that I am not interested in the
17   event thereof.
18       IN WITNESS WHEREOF, I hereunto affix my
19   signature and seal the 4th day of November, 2019.
20
21           _____
             CYNTHIA A. CRAIG, RPR
22           GENERAL NOTARY PUBLIC
23
24   My Commission Expires:
25
```