**BEAVER VALLEY RAIL**
**RAILROAD CONSULTING**

**Stephen M Timko**
Post Office Box 1
South Heights, PA  15081-0001

412-889-2097

Smtimko@aol.com

**Physical address for UPS & Express Mail:**

**1407 Todd Avenue**
**Aliquippa, PA  15001-4732**

November 15, 2019

Atty. Paul Banker
Hunegs, LeNeave & Kvas, P.A.
1000 Twelve Oaks Center Drive
Suite 101
Wayzata, MN  55391


Re:  Tischer v. Union Pacific Railroad

Dear Atty. Banker:

I have conducted an analysis of the incident at the Altoona, WI rail yard which occurred on August 12, 2017.  The incident involved Jacob "Jake" Tischer becoming ill and disoriented, confused, and unable to perform his duties a Conductor in the late afternoon hours at the location and date indicated above.  This resulted in Mr. Tischer being relieved of his duties, transported to a local Medical Facility, and further, transported by air-ambulance to a specialized-care clinic.

My analysis specifically included review of various documents and reports, as well as a review of depositions provided by your office, further identified in this report.  My qualifications on railroad operations, supervision, and training, resulting in my present profession of Railroad Consultant and Expert Witness are described in my CV which is attached to this report.  I am not providing any opinions concerning the medical issues that may be present in this instant case.  A site inspection was not required by me in this matter.  I have had two telephone conferences with the Plaintiff's attorney in this matter—an initial introduction and basic facts, and a follow-up call to discuss details of the material being forwarded to me for review.


## Qualifications of the Expert:

The Expert, Stephen M. Timko, Jr., is a 43-year railroad employee in the Operating Department of three Class 1 railroads; Erie Lackawanna, Conrail, and Norfolk Southern (name changes due to mergers).  Additionally, five years' service on a Class III shortline railroad, Western New York & Pennsylvania Railroad, LLC.  The majority of the employment period (1984-2006) was spent supervising field operations and training employees on safe operations and operating rules.

My daily activities while employed by Conrail and Norfolk Southern between June 1984 and June 2000, included constant interactions with railroad Operating Department employees observing them while performing their daily tasks, in various settings, conditions, and environments.  This practice continued between April 2001 and April 2006 when employed by the Western New York & Pennsylvania Railroad as General Manager, and subsequently, as Vice President and General Manager.

Concurrently with part of the employment of the Expert (2001-present), the Expert functioned as a consultant in the field of Railroad Safety Training and Operations.  Numerous clients sought the Expert to perform rail-related safety training, preparation of Federal Programs, and training on same.  Safety training was also performed for several industrial rail operations in the past eighteen years, including, but not limited to steel plants, refineries, bulk oil transload operations, a municipal subway authority, and others.

Investigation of rail-related incidents, accidents, and operations have been funneled to the Expert by dozens of law firms, representing both Plaintiffs and Defendants, as well as third-party interests.  Those cases have varied in severity from semi-minor lost time injuries to occupational death incidents.  The broad scope of the Expert's travels for these cases, many performed as repeat cases for a specific law firm, include incidents in the states of Maine, Massachusetts, New York, Pennsylvania, Ohio, Indiana, Illinois, New Mexico, North Carolina, South Carolina, Virginia, West Virginia, New Jersey, Georgia, and Washington, DC.

My CV, and a list of cases in which testimony has been given, is attached to this report.

My fee for Expert Witness Service is $200.00 per hour for all work performed, half-rate for travel time, plus actual out-of-pocket expenses.  A retainer of $3,000.00 is required prior to any work being performed.  The retainer was received on October 24, 2019, and has been applied toward this case.  It is anticipated that the retainer will cover nearly all costs associated with this case to this date.  Additional charges may be accrued if trial testimony, deposition, or field inspection is required.

The Expert is an author of railroad photo books dealing with railroad scenes, specifically equipment (cars and locomotives) and structures.  The number of books authored since 2006 reach approximately 100, each consisting of up to 375 full-color photos of the subject matter.  The works are hard covered and may be found listed by the publisher, Morning Sun Books (www.morningsunbooks.com).  None of the books authored offer opinions on safety or depict unsafe acts.  They are strictly railroad photo books of various subject matters.

## Materials reviewed:

The following documents, reports, depositions, and photos were reviewed prior to forming an opinion in this matter.  Any document listed below should be considered to include exhibits to that document.

Complaint and demand for Jury Trial   03/01/19
Union Pacific's third-party complaint response of 05/01/19
Plaintiff's Second Supplemental Rule Disclosures
Union Pacific's response to above Second Disclosure.
PTI's response to UP's supplemental interrogatories
Union Pacific's Supplemental Responses to Plaintiff's request for production of documents.
Deposition of Jessica Tischer
Deposition of Chaz Lux
Union Pacific Safety Rules
GCOR (General Code of Operating Rules) Seventh Edition
Deposition of Erik Erickson
Deposition of John C Thomas
Deposition of Jessica Carson
Deposition of Michael Linstedt
Deposition of Todd Nutter
Deposition of Neil Franchuk
Deposition of Stephen Mark Marvin
Deposit of Dr. Holland
Deposition of Debra Gengler

# Incident site:

The incident described herein occurred within the general area of the Union Pacific Railroad (former Chicago & Northwestern Railroad) rail yard at or near Altoona, WI.

# Review of railroad safety culture:

Safety is paramount on or about railroad property, for both the public and employees.  When entering railroad shops, yards, and property, more often than not, visitors and employees are greeted by safety-related messages.  Those messages often relate to saying such as "Zero Injuries, Zero Incidents, Zero Accidents", or "Safety First", "Safety First, Last, and Always", and other catchy phrases.

From day one, employees are taught that one must "follow the safe course", and "report all accidents, injuries, and incidents".  Nearly all Operating Rule Books, Employee Timetables, Special Instructions, Bulletin Orders, etc. carry a safety message.

For the most part, according to my experience over the past 54 years, employees are not trained to handle medical emergencies, instead, directing personnel to summon help via 9-1-1.  I have personally witnessed this during my agreement and non-agreement (supervisory) years.  The books noted in the previous paragraph are generally known as "Operating Manuals".  The Operating Manuals most always contain instructions on how to seek emergency medical assistance, the location and phone numbers of local medical facilities, and/or police and fire phone numbers.  Additionally, various railroads permit the summoning of emergency assistance directly from the locomotive via the radio system.  Failing that installation, Train Dispatchers, and others in charge of certain territories, have the means to summon emergency assistance as a result of an incident at a road crossing, and illness or injury to an employee, passenger, or trespasser, as well as reporting other unusual conditions.

# Statement of facts:

1. **Company issued documents**

The General Code of Operating Rules (GCOR) state the following:

**Item 1.1.1**   **Maintaining a Safe Course**
In case of doubt or uncertainty, take the safe course.

**Item 1.2.1**   **Care for Injured**
When passengers or employees are injured, do everything reasonable to care for them.

Union Pacific Railroad Safety Rules (June 1, 2017)

**Statement of Safety Policy:**

It is Union Pacific Railroad's policy to conduct its business in a manner that addresses the safety of employees, contractors, customers and the communities we serve.  Union Pacific will strive to prevent all incidents, accidents, injuries and occupational illnesses through the active participation of all stakeholders.  The company is committed to continuous efforts to identify and manage safety risks associated with its activities.

Accordingly, Union Pacific's policy is to:
    Encourage and support:
        Employee engagement in workplace safety;

       A Total Safety Culture
       Care for employees

- Maintain infrastructure and equipment, establish documented safety management systems, provide training and conduct operations in a manner aimed at safeguarding people and property;
- Communicate with employees, contractors, communities and customers with respect to their roles and responsibilities surrounding rail safety;
- Comply with all applicable laws, regulations, rules and instructions;
- Respond quickly, effectively, and with care to emergencies in cooperation with authorized government agencies;
- Undertake appropriate reviews and evaluations of its operations to measure progress, foster compliance with this policy and continually improve.

**2. Statement of expert's experiences:**

- It's common knowledge that railroad employees are encouraged to "work safely" at all times.
- Employees are required to report any accident, incident, or injury "as soon as possible", often additional requirements are in place to require this reporting to occur prior to marking of duty on that particular day.
- The Expert's personal experience is that many employees tend to "walk it off", rather than report an injury or incident, and face paperwork, ridicule, and monitoring of performance, in addition to possible disciplinary action.
- The above statement also relates to employees sustaining a minor medical event, or even a major medical event that the employee attempts to mask as minor, or non-existent.
- As a person who has spent over a half-century in the Operating Department of several railroads, with additional time spent on consulting duties with other railroads, as well as private industry railroad operations, I can state, without question, that the railroad company has the absolute right to send an employee for medical evaluation when it is brought to the manager's attention that an employee is acting outside their normal behavior pattern.
- Employees are intimidated by Company Attendance Policies, often reporting for duty in a condition less than favorable.
- Employees are "tracked" by various crew management systems, targeting them for possible discipline, up to and including dismissal, for "excessive absenteeism" under company policy.
- "On duty" railroad employees are required to follow directions and instructions of their supervisor (or any manger), and failure to do so can be construed as insubordination.
- Railroad managers, including those on duty at Altoona on August 12, 2017, have the exclusive obligation to direct an employee to a medical facility if the employee shows signs or symptoms of impairment.
- Co-workers and associates, including supervisors, have the duty and the right to advise managers of an impaired employee.
- Long-standing railroad industry practices include "When in doubt, follow the safe course".
- The Expert, performed as a railroad manager (1984-2006).

# Opinions of the Expert:

1. Employee Tischer was a dedicated employee who took his job and assignments seriously.
2. Employee Tischer was intimidated by Union Pacific's attendance policy
3. Employee Tischer attempted to perform his duties as a Union Pacific Conductor when he was medically impaired, the impairment was quite possibly unknown to him.

4. Co-workers failed to inform Union Pacific management of Mr. Tischer's possible impairment in a timely manner.
5. Union Pacific management failed to summon medical attention for Mr. Tischer in a timely manner, after being advised of a possibly impairment or medical event, and after interviewing Mr. Tischer in person.
6. Union Pacific management placed service requirements ahead of employee well-being.

## Testimony of the Expert:

I will offer testimony in the Tischer v. Union Pacific case, as follows:

1. Mr. Tischer expressed that he was concerned about marking off (sick) after accepting a call for a work assignment. I will further testify that Class 1 railroads attempt to have employees available for work assignments 100% of the time after being properly rested in accordance with Federal Regulations. This is, of course, is in exception to scheduled Personal Days or Vacation periods, and/or prior approved absences. I will testify as to my actions as a manager on Conrail and Norfolk Southern (1984-2000) when I was responsible for maintaining proper attendance of employees.

2. Union Pacific called employee Tischer to work for a specified time at Altoona, WI, then "broke the call" due to the unavailability of an engineer. I will testify that this adds undue stress and burden to the employee as he has accepted the call for duty, and in this instant case, departed his home for the assignment, then, acting as expected of a dedicated employee, answered a phone call from the crew management center, which in fact, delayed, or "set back" his reporting time. The employee (Tischer) elected, through no fault of his own, to delay his arrival at Altoona, and nap along the way at a rest area or truck stop. This has been known to add mental and physical anguish to employees, as well as co-workers and family members.

3. I will offer testimony that Mr. Tischer was noted to be "out of sorts" to several employees, managers, and contractors at various times during the day, specifically as follows:

   a. Co-worker, engineer Neil Franchuk is aware of Tischer not feeling well initially after commencing duty at Altoona, WI shortly after 2:00 PM.
   b. Neil Franchuk further observes them Tischer is unable to perform a miniscule task of changing the channel on his portable radio at approximately 7:40 PM. Franchuk confers with Tischer about making a second trip to Norma, WA.
   c. Neil Franchuk is concerned about a second trip to Norma with Tischer, and advises Union Pacific supervisor Marvin that Tischer is sick and asks Marvin to get involved with Tischer.
   d. Marvin expresses to Franchuk that he's under pressure to have crew make a second trip to Norma to pull outbound cars.
   e. Contract PTI driver Lux, transporting Tischer, notes that Tischer is having difficulty releasing his seatbelt.
   f. At approximately 8:15 PM, Union Pacific supervisor Marvin, by testimony given, meets and observes Tischer, and asks if he is "OK". Testimony further indicates that Tischer responds that he is OK and does not require medical attention, however Marvin does not feel that Tischer is "OK". At this point, supervisor Marvin should have taken into consideration the information provided by co-worker Franchuk who had been working with Tischer for over six hours, and the information provided by a third-party contractor, PTI driver Lux, both of which made observations and expressed concerns of Tischer not being able to properly perform normal functions, as well as his own observation, and summoned medical attention for Tischer. During this same event timing (approximately 8:15 PM) Tischer uses portable restroom in yard, and drops his brake stick, and was

observed "stumbling". At this point in time, contract PTI driver Lux observes this, along with Marvin and others, and co-worker Thomas takes Tischer into shanty. Lux states, as an observer without an interest in Union Pacific's business concerns, "he's not well, he's stumbling around, do not send him."
- g. It will be attested to that co-worker John Thomas and Harold Lowe observed Mr. Tischer in the yard office and expressed concern about Tischer's condition to Mr. Marvin. At this time, Mr. Marvin was observed working with the computer to provide paperwork for Mr. Tischer and Mr. Franchuk to return to Norma for a second outbound train from that location. Mr. Marvin still was not convinced that Mr. Tischer was acting "out of his normal range of function". His (Marvin's) main focus appeared to be (by all testimony) that he would be in trouble if the second trip was not made.
- h. During this general time frame (8:15—8:35 PM), testimony has been presented that Mr. Tischer, in addition to observations made near the portable restroom, was unable to open a bottle of water, and Thomas observed "his face was drooping". Thomas then asserted to Marvin "…I think he is having a stroke; you need to call 9-1-1". I will reiterate Mr. Thomas's testimony that Tischer then indicated that he "wasn't OK". Also, at this time, Mr. Marvin elected to get Mr. Tischer into the cab, prior to contacting 9-1-1.
- i. I will testify that Mr. Thomas indicated in his testimony that he (Thomas) offered to take Tischer's place, and return to Norma with Franchuk to complete the work, but Marvin refused that offer, stating he needed Thomas to work in the yard at Altoona. However, Thomas' testimony illustrates that he did no additional work after this medical event.
- j. Prior to, or approximately 8:35 PM, Union Pacific supervisor Marvin, untrained to detect medical conditions such as low sugar events or strokes, aware of Tischer's condition and inability to function properly, directs Tischer to contact his wife for a ride home, and diagnoses Tischer's condition as a low sugar event, travelling to a convenience store to obtain a Gatorade and a candy bar. During this period Marvin also advises his supervisor, possibly to gain his support, that he is sending Tischer home.
- k. I will testify that during my career as a railroad employee, and specifically as a supervisor, that we were not trained in medical diagnosis, other than employees who have been trained in CPR, and are directed to contact 9-1-1 in any emergency situation.
- l. Testimony will be offered by the Expert, that, never during my career as a railroad supervisor, have I ever been questioned, reprimanded, or disciplined for erroring on the side of safety, and seeking medical attention for an employee that I considered to be functioning outside his (or her) normal range or ability. I will further expand on the subject by adding that on more than one occasion, the employee did not require medical treatment, having been hampered only by cold, flu, or self-inflicted periods of stress or lack of proper rest. Likewise, on other occasions, the employee required some type of medical treatment. It was always expressed to me "when in doubt, follow the safe course".
- m. I'll reiterate testimony of Lux that when Tischer became sick while being transported in the vehicle between the shanty to the depot, that it was at this time, approximately 8:53 PM, that Marvin observes Tischer lying on the ground, face drooping on left side, and unable to move his left arm or leg.
- n. Testimony will be given by me that Marvin testified that he summoned medial assistance via 9-1-1 at 8:56 PM. I will expand on the fact that medical assistance was delayed by nearly an hour while supervisor Marvin attempted to downplay the event and to have Franchuk and Tischer continue working.

4. I will testify that it's a normal courtesy, as well as an ethical function, to accompanying an on-duty employee to a medical facility. Federal Railroad Administration regulations require certain information to be obtained for proper documentation and reporting.
5. Finally, I will testify that my training always included meeting the employee's family and making certain that they were provided with transportation, food, and lodging, if required when an employee was hospitalized due to an on-duty injury or event.

## **Findings of the Expert:**

The methodology used to form my opinions are based upon my review of the aforementioned documents and exhibits, and referenced standards of care and guidelines. After review of the above, I examine the evidence and testimony with my education, training, and work experience, I have formed professional opinions in this case, to a reasonable degree of scientific and professional certainty, that are described in this report.

Respectfully submitted,

*Stephen M. Timko*
Stephen M Timko
November 15, 2019

# STEPHEN M TIMKO
## Beaver Valley Rail
P O Box 1
South Heights, PA 15081-0001

Phone: (412) 889-2097         smtimko@aol.com         02-01-19

## QUALIFICATIONS SUMMARY

Lifetime employment in railroad service and post-retirement efforts focused in railroad safety operations. Fifty-four years of railroad and consulting service in Transportation and Operating Departments. Promoting safe and efficient movement of trains over entire divisions and regions. Planning policy development in safety and operations fields as well as fiscal management. Specializes in Operating Rules and Safety Procedures for railroads and industrial railroad operations and evaluation of operations in problem areas. Retirement permitted the knowledge obtained to be translated into private venture. Performs as an associate with Clear Track Ahead, LLC, performing GPS integration of railroad right-of-way mapping and emergency management/response maps.

## PROFESSIONAL EXPERIENCE

### *Owner –Beaver Valley Rail---Aliquippa, PA*                                          *2001 - present*
Provides railroad consulting service to industries and entities operating intra/inter-plant switching railroads and to law firms involved in railroad accident and/or injury related litigation. The goal is to share the knowledge gained in 54 years of railroad-related service with others who can benefit from it. The ultimate goal is to make railroad operations, both public and private, a safe and efficient operation. This process involves the writing of Plans, Policies, and Procedures that comply with FRA (Federal Railroad Administration) regulations, covering such disciplines as Drug & Alcohol, Hazardous Material, Haz-Mat Security, Railroad Operating and/or Safety Rule Compliance, Roadway Worker Protection, Hearing Conservation, Locomotive Engineer Certification and Conductor Certifications, as well as other areas of the CFR (Code of Federal Regulations). Actively involved in all areas of accident and personal injury investigation.

### *Vice-President & General Manager—Western New York & Pennsylvania RR, LLC       2001 – 2006*
Originally hired as consultant, later as an employee to reopen a dormant 190 mile rail line through the Southern Tier of New York and northwestern Pennsylvania. Provided personal experience of specific rail line in order to develop a customer base, provide start-up rail service, and hire maintenance and operating personnel. Coordinated the flow of over $18,000,000 in State and Federal Grants to rehab track and signal facilities. Coordinated contractor work, in accordance with operating plan and Federal regulations. Provided management oversight of the entire line from out of service conditions to 40 MPH, FRA Class III track standards. Instrumental in completing negotiations to permit Norfolk Southern unit coal trains to operate via WNYP RR in order to provide income to WNYP and reduce costs to NS.

### *Assistant Superintendent—Train Operations -- Norfolk Southern Rwy., Pittsburgh, PA,1999--2000*
Responsible for the operation on Amtrak passenger trains and Norfolk Southern freight trains on entire Pittsburgh Division (Harrisburg, PA to Ft. Wayne, IN). Supervised 110 Train Dispatchers in the 24/7 operation of trains, maintenance personnel and inspection of rail lines on Pittsburgh Division.

### *Manager—Operations Planning, Conrail & Norfolk Southern Rwy., Pittsburgh, PA.1996--1999*
Oversaw the operation of the Pittsburgh Division of Conrail, and was involved in the Norfolk Southern merger process when acquiring Conrail in 1999. Responsible for implementing changes in operations, procedures and other division upgrades and efficiencies. Responsible for crew transportation (taxi) and lodging (motel) facilities for ten terminals and reconciled billing for same. Functioned as Division Trial Officer on employee discipline cases and worked with the Special Audit Group (Philadelphia Headquarters) on employee fraud and theft cases. Worked directly for the Division General Manager.

*Lead Trainmaster---Conrail, Youngstown, OH*                                                                 1989-1996

Senior Transportation Officer at Youngstown, OH terminal of Conrail with outpost assignments at Oil City, Meadville, Erie, and Sharon, PA, Dunkirk, NY and Lordstown, OH.  Supervised all train and engine service employees in the above area and coordinated operations with other departments and railroads.  Responsible for over 20 daily yard crews, 15 daily local crews and various numbers of through trains.

*Supervisor of Operating Rules, Conrail, Youngstown, OH/Pittsburgh, PA*                 1984-1989

Annually trained and tested over 1200 Operating and Maintenance personnel on Youngstown (later Pittsburgh division) of Conrail on the Operating Rules.  Responsible for Operational Testing on all employees.  Qualified train and engine service employees on territory as required.  Responsible for the qualification of Amtrak off-corridor employees on the operation of passenger trains between Ft. Wayne, IN. and Pittsburgh, PA.  Provided qualifications to employees of shortline railroads which operated over Conrail lines for interchange and trackage rights.  Instrumental in development of NORAC Rule Book.

*Train Dispatcher—Assistant Chief Train Dispatcher-- Conrail*                              1976—1984
*Train Dispatcher—Assistant Chief Train Dispatcher—Erie Lackawanna RR*          1965--1976

Responsible for the safe and efficient movement of passenger and freight trains over various portions of the Mahoning Division of Erie Lackawanna RR as well as Conrail (after 1976 merger).  Also responsible for coordinating maintenance and testing of signal and track appliances with railroad operations.

**EDUCATION**

   Champion Local School System, Warren, OH

**PROFESSIONAL AFFILIATION**

- Operation Lifesaver Participant and Advocate
- Member of Board of Directors of the Erie Lackawanna Railroad Historical Society
- Member of several Railroad Historical Associations including: Toronto, Hamilton & Buffalo Railway Historical Society, Mahoning Valley Railroad Heritage Assn, Orrville (OH) Railroad Heritage Association, Grand Trunk Western Railroad Historical Society, and the French Creek Valley Railroad Historical Society.
- NARSCI---National Association of Railroad Safety Consultants & Investigators

**PERSONAL ACCOMPLISHMENTS**

+ Injury free railroad employee entire career-- 43 years.
+ Winner of Norfolk Southern Marketing Award for 2004   "Unit coal trains"
+ Winner of ASLRRA Gold Safety Award for 2004
+ Winner of Amtrak President's Award—1997 "Partners in Progress Team—Champion of the Rails"
+ Author of 100 railroad related books published by Morning Sun Books (www.morningsunbooks.com)

**PROFESSIONAL TRAINING**

+   Attended FRA Training Seminars since 2001 at following locations:

West Lafayette, Indiana, Lewiston, Maine, Syracuse, Falconer, and Lakeville, New York, Edison and Hammonton, New Jersey, Cleveland, Ohio, St. Louis, Missouri, Boca Raton, Florida, Charleston and Myrtle Beach, South Carolina, and Baltimore, Maryland.

**S t e p h e n   M   T i m k o**                                                                                              Page Two (end)

**BEAVER VALLEY RAIL**
RAILROAD CONSULTING

Stephen M Timko
Post Office Box 1
South Heights, PA  15081-0001

412-889-2097

Smtimko@aol.com

Physical address for UPS & Express Mail:

1407 Todd Avenue
Aliquippa, PA  15001-4732

# List of Cases Handled and Testimony Given Since January 2015

**01/28/2015**   **Rossman, Baumberger, Reboso & Spier, PA**   Samuel ***Belcher vs. CSX.***  Improper diagnosis of medical incident.  Deposed in Pittsburgh.  (Case # 2012CA13343 Circuit Court, Fourth Judicial District, Duval County Florida)

**04/15/2015**   **Cranwell, Moore & Emick, PLC.**  Patricia Evans v. NS.  FELA personal injury.

**04/03/2015**   **Atty. Telissa K. Lindsey.**  Representing multiple plaintiffs in Paulsboro, NJ Conrail Derailment injuries.

**04/28/2015**   *Various Plaintiffs vs. Conrail Shared Assets, et. al.*  (Multiple plaintiffs for injuries sustained in toxic chemical release from railcar at Paulsboro, NJ derailment site.

*08/07/2015*   *Retained by Atty Feliz Rael   Calvin Harvey vs. Burlington Northern Santa Fe Railway* (FELA Personal Injury) Thirteenth Judicial District Court, County of Valencia, State of New Mexico.  No:  D-1314-CV-2013-01396.

**11/06/2015**   **Oxley, Malone, Hollister, Warren & Spaeth, PLL  (Findlay, OH)  Gene Garza v. Norman Abood, Esq.**

**01/21/2016**   **Atty Rick Shoultz of Lewis-Wagner.  Indianapolis, IN**   Personal injury action against contractor Rehiehs Freighliner, CSXT, et. al.  Crossing accident.

**03/04/2016**   **DJS Associates,** for New Jersey Attorney General.  Rose DuBois v. New Jersey Transit.  Passenger personal injury claim.  Proved falsification of circumstances.  Case dismissed.

**03/12/2016**   **Alpert Schreyer**   Diedre Smith-Lawson v. Washington Metropolitan Transit Authority.  Passenger personal injury.

**04/04/2016**   **DJS Associates,** for New Jersey Attorney General.  Susan Linton V. New Jersey Transit.  FELA Personal Injury

**05/16/2016**   **Goldstein, Bender, & Romanoff**   James West v. H&M International Transportation, BNSF, et. al.

**06/15/2016**   **DJS Associates,** for New Jersey Attorney General.  Cuthbert v. New Jersey Transit.  FELA Personal injury.

**06/20/2016**   **Hardy-Pence, PLLC.**  Contractor for CSX.  Estate of Michael Sparks v. CSXT and Progress Rail.

**07/06/2016**   **Epstein Ostrove, LLC.**  Quinlin v Amtrak.  Passenger personal injury.

**10/10/2016**   **DJS Associates,** for New Jersey Attorney General.  Henderson v. New Jersey Transit.  FELA Employee injury.

**10/02/2017**   **Atty Andrew Gross, Dorice Sisco-McKinney v. Maryland Area Transit Authority.**  Passenger injury.

**11/07/2017**   **Briggs & Wholey, LLC, Rockport, ME**   Justin Stevens v. New Brunswick Central and Maine Southern Railroads.   Settled in arbitration Oct, 2019

**05/25/18**   **The Moody Law Firm, Inc.**  Michael T. Gearheart v. CSX Transportation.  FELA Personal Injury.  Active Case---testimony not offered as of this date.

**06/30/18**   **DJS (Atty Howard Cohen) Rodriguez v. Buck Equipment and Norfolk Southern Railway**.

**07/18/18**   **DJS (Atty Danielle Duffy) Clarice Chambers v. SEPTA (SouthEast Pennsylvania Transportation Authority)**

End